43671. WILLIAMS v. MAYOR &c. OF ATLANTA et al.

EBERHARDT, Judge. Appellant, an Atlanta policeman, was tried before the police committee of the board of aldermen on charges of violating rules and regulations of the police department. It was charged, inter alia, that appellant violated Rule 5 of the Internal Security Division of the department by refusing to give the name of an informer to a lieutenant of the division after having previously advised him of information received from the informer of wrongdoing on the part of certain police officers. Rule 5 provides that each member of the department must furnish the division (concerned with the investigation of conduct, honesty, morale, etc. of policemen) with all information in their possession which the division determines to be required in its investigation of any matter involving the department.

Upon being found guilty and discharged by the committee, appellant filed his application for certiorari in the Superior Court of Fulton County. This appeal follows the overruling of that application. *Held:*

1. Appellant admits that he refused to identify the informer but contends that because of public policy he was not required to do so and that there was therefore no authority for his discharge which, under *Deason v. DeKalb County Merit System Council,* 110 Ga. App. 244 (138 SE2d 183), must be held to be arbitrary, indiscriminate and void.

While as a general rule the government may be privileged to refuse to make public the identity of informers who furnish information relating to violations of law (see *Code* § 38-1102; *Morgan v. State,* 211 Ga. 172 (84 SE2d 365); *Anderson v. State,* 72 Ga. App. 487 (34 SE2d 110); *Crosby v. State,* 90 Ga. App. 63 (82 SE2d 38); *Roddenberry v. State,* 90 Ga. App. 66 (82 SE2d 40); *Hodges v. State,* 98 Ga. App. 97 (7) (104 SE2d 704) (rev'd on other grounds, 214 Ga. 614 (106 SE2d 795); *Staggers v. State,* 101 Ga. App. 463, 465 (5) (114 SE2d 142);

McCray v. Illinois, 386 U. S. 300 (87 SC 1056, 18 LE2d 62);
8 Wigmore, Evidence 761, § 2374 (McNaughton rev. 1961);
58 AmJur, Witnesses § 534 (1967 Cum. Supp.); Annot., 76
ALR2d 262), we have been cited no authority to sustain the
proposition that a police officer is privileged to refuse to dis-
close the identity of an informer to his superior officers in the
internal workings of the department. If the purpose of the
privilege is to protect the public interest in effective law en-
forcement (see Roviaro v. U. S., 353 U. S. 53 (77 SC 623, 1
LE2d 639); People v. McShann, 50 Cal. 2d 802 (330 P2d 33);
State v. Hardy (Fla. App.), 114 S2d 344), or, as Wigmore
suggests, if it applies "wherever the situation is one where
without this encouragement the citizens who have special in-
formation of a violation of law might be deterred otherwise
from voluntarily reporting it to the appropriate official" (8
Wigmore, supra, at 768), the record fails to demonstrate any
need for the extension of the rule to the facts of this case.
Nothing to the contrary appearing, we would assume that the
public interest in effective law enforcement is better protected
by making full disclosure of all information relating to sup-
posed wrongdoing of police officers to the division created to
investigate such matters. Accordingly the "informer privilege"
does not protect appellant against Rule 5, which is but a re-
statement of the policeman's obligation under the general law.

2. (a) Appellant complains of the fact that the hearing before
the police committee was held at night, or at an "unseemly
hour." While most people would prefer getting their work
done during the day, or on a day shift, there is nothing illegal
about holding a night session of court or of an administrative
body and this does not affect the validity of its judgment.
*Farmer v. State,* 91 Ga. 720 (3) (18 SE 987). It appears that
the committee had been in session, disposing of other cases
or matters during the preceding evening, and reached appel-
lant's case in due course about 12:50 a.m., when it was called
for hearing.

(b) At the beginning of the hearing before the Police Committee
the following colloquy occurred: "Mr. Edwards: I would like
to make a motion at this time. This is the first time in my
practice of law that I have ever been in a hearing to be started
at ten minutes to 1:00 in the morning. I feel like it is really
an imposition on everybody, including the members of the
board, to start a hearing at this time. The Chairman: Mr.

Edwards, we have all of the people here, they have sat with us all this long, and if the committee has no objection, we are going to dispose of this matter. Mr. Edwards: All right, sir. I would like to ask for the rule of all of the witnesses, Mr. Chairman."

It is contended that this colloquy amounted to a motion for continuance and that the decision by the committee to proceed was in effect overruling the motion.

This contention is without merit. In order for a party successfully to complain of a ruling which he contends to have been a denial of a continuance, he must be able to show a formal and proper motion in the record as the basis of the asserted error, and this rule is technically construed. *Trammell v. State*, 183 Ga. 711 (1) (189 SE 529); *Atlantic C. L. R. Co. v. Cohn & Co.*, 4 Ga. App. 854 (1, 2) (62 SE 572); Leverett, Hall & Christopher, Georgia Procedure & Practice § 14-9, p. 325 (1957). The colloquy here appears to be similar to that occurring in *Kittle v. Brown*, 28 Ga. App. 212, 213 (2a) (110 SE 740), where " 'upon call of the case, the defendant's counsel stated that his client was sick and unable to attend court and that he desired to make a motion to continue said case,' " the court observing that "the defendant's counsel made no motion for a continuance, but merely stated that he desired to make such a motion." Not only was no motion for continuance actually and formally made in this case, but no reason was given why proceeding with the hearing at that hour, albeit unusual, would harm appellant. Since there was no formal and proper motion for continuance showing harm, no error appears in this connection. And compare *Farmer v. State*, 91 Ga. 720, supra, holding that a night session of court is not illegal.

3. There is no merit in the contention that the trial court's sustaining of appellant's exception number 11 to respondents' answer to the petition for certiorari established as the law of the case that the conduct of the proceedings was illegal. The thrust of the exception does not go to the answer as a whole, and we construe the order sustaining the exceptions as striking only the paragraphs setting forth affirmative matters but leaving intact the paragraphs admitting or denying paragraphs of the certiorari petition.

4. Error is enumerated upon the allowing of the Chief of Police and the city's attorney to remain in executive session with the

committee, contrary to the department's Rule 11, which provides: "In the trial of any member of the Department charged with the violation of the rules and regulations of the Department, after testimony and argument have been heard, the room shall be cleared, and the committee shall go into executive session before the decision of the committee is formed." It is the position of appellant that the Chief of Police was, in effect, the prosecutor before the committee and that when he was permitted to remain in the executive session it was tantamount to having his prosecutor sit in judgment upon the case; that the city's attorney had the duty to urge before the committee the position and contentions of the Chief of Police and that when he was permitted to remain in the executive session it was tantamount to having the prosecutor's case re-advocated before the committee, with no opportunity afforded to appellant of replying.

Many cases have dealt with situations in which charges were preferred by an administrative agency or a committee itself, or by some member. This has been held to violate no constitutional right or to raise no presumption of unfairness in the proceedings. McVicar v. State Board of Law Examiners, 6 F2d 33. But see *Clary v. Mathews*, 224 Ga. 82 (160 SE2d 338). "The spectacle of an administrative tribunal acting as both prosecutor and judge has been the subject of much comment, and efforts to do away with such practice have been studied for years. The Board of Tax Appeals is an outstanding example of one such successful effort. But it has never been held that such procedure denies constitutional right. On the contrary, many agencies have functioned for years, with the approval of the courts, which combine these roles. The Federal Trade Commission investigates charges of business immorality, files a charge in its own name as plaintiff, and then decides whether the proof sustains the charges it has preferred. The Interstate Commerce Commission and State Public Service Commissions may prefer complaints to be tried before themselves. If an administrative tribunal may on its own initiative investigate, file a complaint, and then try the charge so preferred, due process is not denied here because one or more members of the Board aided in the investigation." Brinkley v. Hassig, 83 F2d 351, 356. Compare 5 U. S. C. 1004 (c).

The situation in *Heath v. City of Atlanta*, 67 Ga. App. 85 (5)

(19 SE2d 746) appears to have been substantially the same as that presented here. However, we have examined the record in *Heath* and it does not appear, either from the petition for certiorari, the committee's answer, or otherwise that there was in force at the time of the hearing before the committee in that case any rule or ordinance making provision for the executive session in connection with the committee's consideration of the evidence and the making of its judgment. That matter was, therefore, not before this court in the *Heath* case.

It seems clear enough from the provisions of Rule 11, of force when the hearing in the present case was heard, that its terms required a clearing of the room of all save those who make up the committee, unless by some provision of law or ordinance others are entitled to remain in the executive session,— and we find none. If the Chief of Police had been an ex-officio member of the committee under the provisions of some rule or ordinance, a different question might be presented; but that does not appear, and requires no ruling at this time. Nor do we make any ruling as to whether the city's attorney stands on a different basis if there were provision for his remaining in session with the committee for the purpose of giving legal advice. Consequently, *Heath v. City of Atlanta,* 67 Ga. App. 85, supra, is distinguishable from this case, and does not require a different result.

We realize that this reversal will send the matter back to the very same committee, but, even so, with observance of the rule when the time comes for the making of its decision in executive session there will be no person in the room with the committee whose mere *presence* is calculated to stifle free discussion and to exert some influence upon what the result is to be.

5. The remaining enumerations of error are without merit.

*Judgment reversed. Bell, P. J., Jordan, P. J., Pannell, Deen and Whitman, JJ., concur. Felton, C. J., and Quillian, J., concur specially. Hall, J., concurs in the judgment.*

ARGUED MAY 6, 1968—DECIDED JULY 9, 1968— REHEARING DENIED JULY 31, 1968—

*Beryl H. Weiner,* for appellant.

*Henry L. Bowden, Ralph C. Jenkins,* for appellees.

FELTON, Chief Judge, concurring specially. I think that what

counsel for the defendant stated to the committee amounts in law to a motion for a continuance or a postponement of the trial of the case. It is inconceivable that counsel was or could have been referring to anything else. This conclusion stands to reason. Any additional argument would be surplusage, but it may be observed that the chairman of the committee ruled that the trial would proceed if the committee had no objection. What about the rights of others to object,—the parties, the lawyers, the witnesses? Two thousand years ago the Hebrews had a law forbidding a trial at night. On the one occasion I have in mind, the law was not observed and the trial was begun at 2 a.m. There is no specific written law in Georgia forbidding a trial at night but there are other rules which make one illegal under the facts of this case. Without attempting to name additional ones, two principles are overriding, common sense and public policy. They are enough for me. Under the facts, to begin a five-hour trial about 1 a.m. violates the dictates of reason and humanity in the absence of counter-compelling reasons why it was necessary in the interest of justice and public policy to proceed at such a time to prevent a miscarriage of justice. The cases cited by the majority in my opinion are not authority for the proposition sought to be sustained, especially the statement that "all" motions for continuance are technically construed. Making the rule so technical in this case is beyond the bounds of reason, in my humble opinion. I think the judgment should also be reversed because of the failure to begin the trial at a sensible hour. I do not think that the cases cited by the majority as to this point are applicable to this case.

I am authorized to state that Judge Quillian concurs in this special concurrence.